25 P.3d 855

**ULTRAWALL, INC., an Idaho corpora-tion; and Scott Trepagnier, Defendants–Counterclaimants–Cross Complaints–Appellants,**

v.

**WASHINGTON MUTUAL BANK, FSB, a Federal Association, Defendant–Counter-claimant–Cross Claimant–Respondent.**

Nos. 26366, 26367.

Supreme Court of Idaho,
Boise, March 2001 Term.

June 5, 2001.

Barry Peters, Eagle, argued for the appellants.

Davison, Copple, Copple, Copple & Ludwig, Boise, for respondent. Terri R. Pickens argued.

WALTERS, Justice

This is an appeal by Ultrawall, Inc. (Ultrawall) from the district court's grant of summary judgment in favor of Washington Mutual Bank (Washington Mutual). The district court ruled that Washington Mutual's mortgage was entitled to be paid prior to Ultrawall's mechanic's lien in a foreclosure action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the lien priority for two construction projects undertaken in the Treasure Valley. Washington Mutual entered into two separate loan agreements with New Concepts Developers, Inc. (New Concepts) whereby Washington Mutual agreed to loan New Concepts funds to construct homes in Boise and Meridian and New Concepts agreed to pay monthly installments on the loans. Washington Mutual secured each of the loans with a deed of trust, one of which was recorded on October 28, 1998, and another that was recorded on November 20, 1998.

Anthony M. Gallegos, who provided engineering and design services for the projects, undertook the earliest known work on the Boise residence on May 8, 1998. Mr. Gallegos also provided the earliest known work for the Meridian residence on October 23, 1998. It is notable that Mr. Gallegos' services took place prior to Washington Mutual recording the deeds of trust in this case.

Ultrawall contracted with New Concepts to provide sheetrocking services for both houses, including the supplying of materials, as well as the installation, taping, and texturing of the sheetrock in connection with each home. Ultrawall performed this work on both houses in early January 1999, after Washington Mutual had recorded the deeds of trust. Washington Mutual made several disbursements to New Concepts under the loan agreement, but ceased doing so when New Concepts stopped making monthly installments. Soon thereafter, numerous claims of lien were recorded against the properties by various laborers and materialmen, including Ultrawall, who were not paid by New Concepts for their services or materials.

On June 14, 1999, Anderson Lumber Company, one of the lien claimants, filed complaints to foreclose mechanic's liens with regard to each residence. The complaints named the developer, New Concepts, the construction lender, Washington Mutual, Ultrawall, and all other lien claimants as defendants. Washington Mutual moved for summary judgment in both cases, asserting that it had priority over all of the various lien holders. Ultrawall filed its answers, counterclaims, and cross-claims seeking a declaratory judgment ranking the priority between itself, Washington Mutual, and the other lien holders. Ultrawall contended that the priority for its lien claims, despite being recorded subsequent to Washington Mutual's deeds of trust, related back to the time when Mr. Gallegos first provided the engineering and surveying services for the construction of the

houses. After hearing arguments, the district court granted Washington Mutual's motion for summary judgment, holding that the bank had priority over Ultrawall's lien claims. Ultrawall appeals the district court's ruling.

## ISSUES

Ultrawall challenges this Court's holding in *Pacific States Sav. & Loan & Bldg. Co. v. Dubois*, 11 Idaho 319, 83 P. 513 (1905), that Idaho's mechanic's lien statute gives each lien claimant priority based on the time that the lien claimant began to work on the project. Washington Mutual requests an award of attorney fees for responding to the appeal.

## DISCUSSION

### A. *Pacific States* Construction of I.C. § 45–506

In 1905, this Court was faced, for the first time, with the question of whether the liens of laborers, materialmen, and contractors relate back to the time of the commencement of a project by any of the lien claimants, or whether the lien attaches in favor of an individual lien claimant from the date on which that particular claimant began to work on the project by commencing to perform labor or furnish material. *See Pacific States*, 11 Idaho at 319, 83 P. at 513. The question was posited to the Court in a context identical to this case: although some of the lien claimants began to work on the project before the lender's deed of trust was recorded, many of them did not. In this case, Washington Mutual concedes that if all the liens relate back to the time of the commencement of the project, "irrespective of the time when the labor was commenced to be performed or the material was commenced to be furnished," then every lien claimant would have a superior priority under I.C. § 45–506. The Court in *Pacific States*, however, held in construing Idaho's mechanic's lien statute that:

> "[a]ll liens for labor commenced and materials commenced to be furnished *prior* to recording [the] mortgages are *prior and superior* liens to said mortgages, and the

liens of all laborers for labor commenced, and materialmen for materials commenced to be furnished, *subsequent* to the recording of said mortgages, are *subordinate* to said mortgages...."

*Id.* at 325, 83 P. at 514 (emphasis added).

Ultrawall asks the Court to revisit and overrule the Court's *Pacific States* opinion. Ultrawall asserts that the Court in *Pacific States* contradicted the terms of the statute by reassembling the statute into separate parts and concluding that the priority of each lien is determined by the category into which the lien claimant fell, be the claimant a laborer, material supplier, or one who commenced the project.

Although Ultrawall's argument has merit, we conclude that the Court's construction of the mechanic's lien statute in *Pacific States*, while not the only possible construction, should nevertheless be left undisturbed. The Court in *Pacific States* broke down the first sentence of the statute into three separate parts that the Court believed illustrated the legislature's intent. By separating those claimants who were involved with "the commencement of the erection of the building" from those who "began after the commencement of the erection of the building" the Court drew a distinction between lien claimants that are entitled to date their lien from the commencement of the construction of a project and those claimants who are entitled to date their lien prior to the recordation of a lender's mortgage but after the commencement of the project. The latter claimants, who the Court described as "persons not theretofore connected with the construction of the building," were thus "entitled to a separate and distinct lien from those who commenced the building." *Id.* at 325, 83 P. at 514.

The current version of I.C. § 45–506 is nearly identical to the statute analyzed by the Court in *Pacific States*.[1] The statute recites:

> The liens provided for in this chapter are preferred to any lien, mortgage or other encumbrance, which may have attached

---

1. An amendment in 1971 added the words "or professional services" to I.C. § 45–506. *See* Act of Mar. 11, 1971, ch. 91, 1971 Idaho Sess. Laws 196.

subsequent to the time when the building, improvement or structure was commenced, work done, or materials or professional services were commenced to be furnished; also to any lien, mortgage, or other encumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or materials or professional services were commenced to be furnished.

Read in its entirety, the first sentence of I.C. § 45–506 suggests that the lien claimant could be given priority when either the building, improvement or structure was commenced, some entity or individual began to work on the building, improvement or structure, or when the materials or professional services were first furnished. In other words, whichever of these events occurred first would determine the priority for all liens as against a mortgage lien holder. Justice Alshie recognized this in his dissent in *Pacific States*, noting that:

It takes both labor and material for the construction of a building, and, when the legislature said that liens for constructing a "building, improvement or structure" should be preferred to any lien, mortgage or other encumbrance which might attach subsequent to the commencement of such building, improvement or structure, it certainly meant to allow liens for every kind of labor and every kind of material which go to the erection and completion of such building, improvement, or structure.

*Id.* at 337, 83 P. at 519.

Ultrawall argues that Justice Alshie's dissent offers a more logical approach to construing the statute. Under Justice Alshie's approach, each of the statutory lien claimants has a priority date that relates back to the date the project was commenced regardless of when the lien claimant's materials or services were provided. Then, if the value of the project is insufficient to pay all the lien claimants, those claimants are paid according to their rank under I.C. § 45–512.[2] Thus, either all of the lien claimants are paid ahead of the construction lender, or none are, depending on whether the lender's mortgage was recorded before or after the project began.

■ There are problems with Ultrawall's proposed approach, however. We first note that the *stare decisis* value of the *Pacific States* decision militates against Ultrawall's claims. The *Pacific States* opinion has provided the basis for prioritizing mechanic's liens in Idaho since 1905, and although the Court should not be hesitant to overrule precedent that is manifestly wrong, *see Smith v. State*, 93 Idaho 795, 801, 473 P.2d 937, 943 (1970) ("when the application of [*stare decisis* ] will not result in justice, it is evident that the doctrine is not properly applicable") " 'a question once deliberately examined and decided should be considered as settled.' " *Scott v. Gossett*, 66 Idaho 329, 335, 158 P.2d 804, 807 (1945) (quoting *State ex rel. Kain v. Fischl*, 94 Mont. 92, 20 P.2d 1057, 1059 (1933)). We also note that several appellate decisions rendered in the last twenty years proceed from the basis that *Pacific States* represents *the* authority dealing with the prioritization of mortgage and statutory lien claims. *See Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 766, 992 P.2d 751, 761 (1999) ("[I.C. § 45–512,] standing alone, does not give the district court jurisdiction to prioritize mechanic's liens in relation to mortgages. It is necessary to consider I.C. § 45–506 in conjunction with I.C. § 45–512 when setting the priorities of mortgage liens in relation to the priority of mechanic's liens.") (citing *Pacific States*, 11 Idaho at 319, 83 P. at 513); *Beall Pipe & Tank Corp. v. Tumac Intermountain, Inc.*, 108 Idaho 487, 492, 700 P.2d 109, 114 (Ct.App. 1985) ("Although the claim of lien is usually filed after the materials have been furnished, the lien relates back to the date on which

---

**2.** I.C. § 45–512 ranks the liens or class of liens in this order:

    1. All laborers, other than contractors or subcontractors.

    2. All materialmen, other than contractors or subcontractors.

    3. Subcontractors.

    4. The original contractor.

    5. All professional engineers and licensed surveyors.

materials were first furnished by the claimant.").

In addition, while the statute can be as read as Ultrawall suggests, it can also be construed, as it was by the Court in *Pacific States*, to mean that the particular lien claimant must either commence to furnish professional services such as engineering or surveying, commence the physical construction of building, improvement or structure, or, if that person or entity was not involved with either of the above activities, begin to work or furnish materials in order for that claimant's lien to attach. In essence, Ultrawall's argument is that a lien claimant should be able to bootstrap his claim to the earliest known work on the project. We believe this represents an inequitable approach from the lender's standpoint, however; and we are not persuaded that those individuals and entities that have no connection with the initial construction of the project, but record their liens after the recording of the mortgage, should be paid in advance of the construction lender.

Moreover, the addition of the term "or professional services" to I.C. § 45–605 in 1971 suggests that the legislature was content with the Court's interpretation and application of the statute. The Court must assume that when the statute was amended, the legislature had full knowledge of the existing judicial decisions and caselaw of the state. *Cf. George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990). As the Court noted in *Pacific States*, if the legislature had originally intended for liens to attach at the time the first claimant began work on the project, "why did not the legislature simply say that *all* liens for labor and material furnished in the erection or construction or repair or change of a building took effect from the commencement of the construction of such building or of such repair or change?" *Pacific States*, 11 Idaho at 326, 83 P. at 514 (emphasis added). Accordingly, we choose not to disturb the *Pacific States* decision.

## B. Attorney Fees

Washington Mutual requests an award of attorney fees as the prevailing party on appeal under I.A.R. 41. Attorney fees are proper only if the Court is left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation. *See Minich v. Gem State Dev., Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Here, Ultrawall has presented a good faith argument for modification of Idaho law, albeit unsuccessfully. *See Hanf v. Syringa Realty Inc.*, 120 Idaho 364, 370, 816 P.2d 320, 326 (1991). Given the divided nature of the *Pacific States* ruling and the potential for an alternative construction of I.C. § 45–506, it cannot be said that Ultrawall's argument was frivolous, unreasonable, or without foundation. The request for an award of fees is denied.

## CONCLUSION

We affirm the decision of the district court granting Washington Mutual's motion for summary judgment. Costs, but not attorney fees, are awarded to Washington Mutual pursuant to I.A.R. 40.

Justices SCHROEDER, KIDWELL, EISMANN and Judge CARLSON, pro tem concur.