970 P.2d 6 (1998)
132 Idaho 213
In the Matter of the Estate of Lionel Malcolm Knudson, Deceased.
IDAHO DEPARTMENT OF HEALTH AND WELFARE, Petitioner-Appellant,
v.
Barbara JACKMAN, Personal Representative for the Estate of Lionel Malcolm Knudson, Respondent.
No. 23928.
Supreme Court of Idaho, Lewiston, April 1998 Term.
November 2, 1998.
*7 Hon. Alan G. Lance, Attorney General; W. Corey Cartwright, Deputy Attorney General, Boise, for Appellant. W. Corey Cartwright argued.
William C. Kirsch, Moscow, for Respondent.

SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED JUNE, 16, 1998, IS HEREBY WITHDRAWN.
JOHNSON, Justice.
This is a Medicaid recovery case. We conclude that section 56-218(1) of the Idaho Code (I.C.), as it existed at times applicable to this case, authorized the Idaho Department of Health and Welfare (the Department) to recover from the available estate of a surviving spouse the balance of Medicaid payments received by an individual who was fifty-five years old or older when receiving the payments if the individual's estate is inadequate to repay the entire amount. We conclude, however, that federal law applicable to this case prohibited this recovery, except from any community property the spouses may have accumulated after a marriage settlement agreement transmuting their community property into separate property of each. We remand for further proceedings consistent with this opinion.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS
Barbara Jackman (Jackman) was the niece of an elderly couple, Hildor and Lionel Knudson (the Knudsons). Jackman was also Hildor's guardian and held a durable power of attorney for Lionel. On behalf of the Knudsons, Jackman signed a "Marriage Settlement Agreement" (the agreement) on March 8, 1993. The agreement transmuted most of the Knudsons' community property into Lionel's separate property. By the agreement, Hildor received as her separate property her personal property and household effects in her possession, her irrevocable burial trust, and $1,900 in cash. The purpose of the agreement was to make Hildor eligible for Medicaid assistance. Hildor received $41,600.55 in Medicaid payments (the Medicaid payments) prior to her death on October 27, 1994.
After Hildor's death, Jackman collected Hildor's estate pursuant to the procedures for small estates contained in I.C. § 15-3-1201. After paying Hildor's funeral expenses and legal fees, Jackman delivered the balance of Hildor's estate, $1,638.03, to the Department on August 10, 1995. The Department accepted this as a partial settlement of its claim for recovery of the Medicaid payments.
Lionel died two weeks after Hildor on November 11, 1994. After Lionel's death, Jackman initiated probate proceedings for his estate and became Lionel's personal representative. Lionel's estate was valued at $40,798.35. The Department sought allowance of a claim against Lionel's estate to recover the remaining balance of the Medicaid payments (the balance of the Medicaid *8 payments). Jackman objected to the Department's claim.
The magistrate judge denied the Department's claim against Lionel's estate because Hildor had an estate, and the Department received the remainder of the estate after expenses. The Department appealed to the district judge, who affirmed the magistrate judge's decision. The Department appealed.

II.

I.C. § 56-218 AUTHORIZED RECOVERY OF THE BALANCE OF THE MEDICAID PAYMENTS FROM LIONEL'S ESTATE.
The Department asserts that I.C. § 56-218, as it existed at times applicable to this case, authorized recovery of the balance of the Medicaid payments from Lionel's estate. We agree.
I.C. § 56-218 provides that medical assistance "paid on behalf of an individual who was fiftyfive (55) years of age or older when the individual received such assistance may be recovered from the estate, or if there be no estate the estate of the surviving spouse, if any, shall be charged for such aid paid to either or both...." I.C. § 56-218(1).
In George W. Watkins Family v. Messenger, 118 Idaho 537, 797 P.2d 1385 (1990), the Court pointed out: "The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results." Id. at 540, 797 P.2d at 1388.
If we were to read I.C. § 56-218(1) not to allow recovery from Lionel's estate of the balance of the Medicaid payments because there was $1,638.03 in Hildor's estate, our reading would be contrary to expressed legislative intent and would lead to "absurd results." Id. This reading would mean that if the estate of a spouse who received Medicaid assistance had even one cent, or a toothbrush, the Department could collect nothing from the estate of the surviving spouse. As acknowledged by Jackman's attorney at the oral argument of this case, this reading of the statute would mean that there is no circumstance in which the legislative intent to recover from the estate of a surviving spouse would be fulfilled. This result is contrary to the expressed legislative intent that the Department recover from the estate of the surviving spouse under some circumstances. The statute should not be read as preventing recovery from the surviving spouse's estate even if the recipient's estate is inadequate for the full recovery of Medicaid payments.
From this analysis we conclude that the correct reading of I.C. § 56-218(1) is that if the estate of the individual who received Medicaid assistance is inadequate to repay the full amount of the assistance received, the Department can recover the balance from the estate of the surviving spouse. Stated in terms of the circumstances of this case, when the Department received the balance of Hildor's estate, there was "no estate" of Hildor remaining from which the Department could recover the balance of the Medicaid payments.

III.

FEDERAL LAW PREEMPTS THE AUTHORITY GRANTED TO THE DEPARTMENT BY I.C. § 56-218 TO RECOVER FROM LIONEL'S ESTATE, EXCEPT FROM ANY COMMUNITY PROPERTY OF LIONEL AND HILDOR.
Jackman asserts that federal law applicable to this case does not permit recovery from Lionel's estate. We agree, except to the extent of any community property Lionel and Hildor accumulated after the agreement.
The pertinent portions of 42 U.S.C. § 1396p(b)(1)(B) and (4), as enacted in 1993, provide, as follows:
(b) Adjustment or recovery of medical assistance correctly paid under a State plan
(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual *9 under the State plan in the case of the following individuals:
. . .
(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of
(I) nursing facility services, ....
(4) For purposes of this subsection, the term "estate", with respect to a deceased individual
(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; ....
This amended statute applied to Medicaid payments for calendar quarters beginning on or after October 1, 1993. Pub.L. 103-66, § 13612(d).
I.C. § 15-1-201(15) defines "estate," as follows: "`Estate' means all property of the decedent, including community property of the surviving spouse subject to administration, property of trusts, and property of any other person whose affairs are subject to this code as it exists from time to time during administration." The agreement, in addition to transmuting the community property Lionel received into his separate property, contained the following provision:
3. We further specifically agree that the income, rents, issues, profits, capital gains, and other earnings or increases on our separate property as described above and the proceeds from any disposition thereof constitute the separate property of the person owning such property and are not community property. The forgoing [sic] also shall apply to all property that may be separately acquired hereafter by either of us in any manner whatsoever.
As authorized by I.C. § 32-906(1), this provision maintained the separate character of the assets transmuted into Lionel's separate property by the agreement, as well as "the income, rents, issues, profits, capital gains, and other earnings or increase" on this separate property. The agreement did not prevent the accumulation of other community property by Lionel and Hildor after the date of the agreement and before Hildor's death. The record before us does not disclose whether Lionel and Hildor had any community property at the time of Hildor's death. If they did, Lionel's interest in that community property may be part of Lionel's estate, and may therefore be part of Hildor's "estate" that 42 U.S.C. § 1396p(b)(1)(B) and (4) authorizes the Department to recover and apply against the balance of the Medicaid payments.
The Department contends that 42 U.S.C. § 1396p(e)(1)(B), enacted in 1993, broadens the "assets" from which it may recover the balance of the Medicaid payments. This portion of the federal law provides, as follows:
(e) Definitions
In this section, the following definitions shall apply:
(1) The term "assets", with respect to an individual includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action
. . .
(B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse,
. . . .
We conclude that this definition of "assets" is not applicable to the agreement, which Jackman signed on behalf of Lionel and Hildor on March 8, 1993. The definition of "assets" contained in the 1993 amendments to the federal statute does not apply "with respect to assets disposed of on or before the date of the enactment of this Act [Aug. 10, 1993]." Pub.L. 103-66, § 13611(e). Therefore, it does not apply to the agreement and does not allow the Department to recover the balance of the Medicaid payments from Lionel's separate property. This is true even though 42 U.S.C. § 1396p(b)(4), which applies to Medicaid payments for calendar quarters beginning on or after October 1, 1993, authorizes the Department to recover the Medicaid payments from "other assets." Without the definition of "assets" contained *10 in 42 U.S.C. § 1396p(e)(1), "other assets" are only those included within Hildor's estate, as defined by I.C. § 15-1-201(15). Lionel's separate property, including the community property transmuted by the agreement, is not part of Hildor's estate.

IV.

CONCLUSION
We vacate the magistrate judge's denial of the Department's claim against Lionel's estate and remand the case to the magistrate judge for further proceedings consistent with this opinion.
We do not address Jackman's contention that pursuant to I.C. § 15-3-720 she is entitled to receive from Lionel's estate her necessary expenses and disbursements including reasonable attorney fees. This is a question the magistrate judge must consider on remand.
We award no costs or attorney fees on appeal.
TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.